UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
U.S.A. FAMOUS ORIGINAL RAY'S LICENSING:
CORP.
                                                          :
                         Plaintiff,              :          12 Civ. 8753 (JGK) (GWG)
                                                          :
          -against-                         :          REPORT AND
                                                          :          RECOMMENDATION
                                                          :
FAMOUS RAY'S PIZZA BUFFET INC. ,
                                                          :
                         Defendant.        :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE:**

        Plaintiff U.S.A. Famous Ray's Original Licensing Corp. ("Original Ray" or "Ray's")

brings this action against Famous Ray's Pizza Buffet, Inc. ("Pizza Buffet") for unauthorized use

of Original Ray's trademarks in connection with Pizza Buffet's restaurant business.  For the

reasons that follow, Original Ray should be awarded $216,000 in damages, $6,091.50 in

attorney's fees, and $627.56 in costs.  Original Ray should also be granted an order enjoining

Pizza Buffet from engaging in acts of infringement and requiring that it deliver up for

destruction all infringing materials.

I.  BACKGROUND

        Original Ray's complaint seeks damages and injunctive relief for (1) trademark

infringement in violation of 15 U.S.C. § 1114;[1] (2) false designation of origin in violation of 15

---

[1]The first count in Original Ray's complaint alleges "Federal Trademark Infringement"
in violation of "Section 43(a) of the Lanham Act," or 15 U.S.C. § 1125(a). See Complaint, filed
Dec. 3, 2012 (Docket # 1) ("Compl.") ¶¶ 32-40.  Because the claims in the first count relate to
registered trademarks, however, we assume Original Ray intended to invoke 15 U.S.C. § 1114.
See generally Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir.2002) (noting that
§ 1125(a) "is a broad federal unfair competition provision which protects unregistered
trademarks similar to the way that [§ 1114(1)] protects registered marks.")

U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); (4) deceptive trade practices in violation of N.Y. Gen. Bus. § 349; (5) false advertising in violation of N.Y. Gen. Bus. § 350-a; (6) injury to business reputation and trademark dilution in violation of N.Y. Gen. Bus. 360-l; and (7) common law unfair competition.  See Compl. ¶¶ 32-76.  Pizza Buffet was served with the complaint but has failed to respond.  See Affidavit of Service, filed Feb. 4, 2013 (Docket # 4).  On April 29, 2013, Judge Koeltl issued an order finding that Famous Original was entitled to a default judgment and referring the case to the undersigned for an inquest with respect to the appropriate judgment to be entered.  See Order, dated April 29, 2013 (Docket # 10).

On May 2, 2013, this Court issued an order directing Original Ray to submit proposed findings of fact and conclusions of law with supporting documentation as to its request for damages and other relief.  See Scheduling Order for Damages Inquest, dated May 1, 2013 (Docket # 12).  Under the Court's order, Pizza Buffet was given until July 17, 2013, to oppose Original Ray's submissions.  Id. ¶ 2.  The Order also notified the parties that the Court would conduct the inquest based upon the written submissions of the parties unless a party sought an evidentiary hearing.  Id. ¶ 3.  A copy of the Order was mailed to Pizza Buffet at its business address.

Because the default judgment entered in this case establishes Pizza Buffet's liability, see Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (citation omitted), the only remaining issue is whether Original Ray has supplied adequate support for the damages and other relief it seeks.  See Kuruwa v. Meyers, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011); accord GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a

defendant's liability . . . and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992).

Neither party has requested an evidentiary hearing, and Pizza Buffet has not made any submission to the Court.  Original Ray's submissions include two declarations and attached documentary evidence.  These submissions seek an injunction, damages based on Pizza Buffet's profits, attorney's fees, and costs.  See Proposed Findings of Fact and Conclusions of Law, filed July 1, 2013 (Docket # 14); Declaration of Agatha Mangano, filed July 1, 2013 (Docket # 15) ("Mangano Decl."); Declaration of Jonathan C. Sullivan, filed July 1, 2013 (Docket # 16) ("Sullivan Decl.").  Because these submissions provide a basis for an award of damages, no hearing is required.

II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of Pizza Buffet's default, Original Ray' properly-pleaded allegations, except those related to damages, are accepted as true.  See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (citing Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences

3

in [plaintiff's] favor.") (citation omitted).  The following findings of fact and conclusions of law are based on the allegations in Original Ray's complaint regarding liability and the admissible evidence regarding damages contained in its submissions.

     A.  <u>Facts Relating to Liability</u>

Original Ray is "engaged in the licensing of and operation of Italian style restaurants that sell pizza and Italian food specialties," Compl. ¶ 8, and "owns a family of registered trademarks incorporating the word RAY'S" including the following:

> (A) RAY'S PIZZA (U.S. Registration No. 2196832);
> (B) FAMOUS RAY'S PIZZA (U.S. Registration No. 2196830);
> (C) FAMOUS ORIGINAL RAY'S PIZZA (U.S. Registration No. 1918484);
> (D) FAMOUS ORIGINAL RAY'S PIZZA EST. 1964 (logo) (U.S. Registration No. 1918483); and
> (E) RAY'S FAMOUS ORIGINAL PIZZA (crown logo) (U.S. Registration No. 3675202).

<u>Id.</u> ¶ 10.  Restaurants licensed and/or owned by Original Ray and its predecessors in interest have continuously operated and existed for over 40 years.  <u>Id.</u> ¶ 9.  Original Ray "and its predecessors in interest have successfully exploited many of [these] marks, extensively advertising and promoting [the marks], and have achieved substantial commercial success in connection with [the marks]" for more than 40 years.  <u>Id.</u> ¶ 12.  Original Ray currently "licenses and/or owns and operates numerous restaurants using the RAY'S Marks in New York City and the New York Metropolitan area" and "has developed and owns valuable goodwill associated with the use of [its] marks in the United States."  <u>Id.</u> ¶¶ 13-14.  The marks are "of great commercial value" and are among Original Ray's "most valuable assets."  <u>Id.</u> ¶16.

Pizza Buffet "operates an Italian style pizza restaurant" on 207th Street in Manhattan and "uses the mark 'FAMOUS RAY'S PIZZA' on its signage, menus, telephone listings, telephone answering and the like."  <u>Id</u> ¶¶ 2, 20-21.  Pizza Buffet is "using [these marks] without consent or

authorization from Ray's [ ] in connection with its own restaurant business and services in New York, New York." Id. ¶ 22.  The "FAMOUS RAY'S PIZZA" mark used by Pizza Buffet is "identical to one of the RAY'S Marks and confusingly similar to [Ray's] other federally registered marks." Id. ¶ 25.  The "FAMOUS RAY'S PIZZA BUFFET" mark incorporates two of the Original Ray marks "in their entirety and as a whole is confusingly similar to the RAY'S Marks." Id. ¶ 26.  Pizza Buffet's acts "have caused and . . . will continue to cause serious and irreparable harm to Ray's and to the valuable goodwill associated with the RAY'S Marks." Id. ¶ 24.  Original Ray has notified Pizza Buffet that its use of the Original Ray marks "infringes on [Ray's] valuable trademark rights, and [has] demanded that [Pizza Buffet] terminate all use of these marks and names." Id. ¶ 28.  Although notified of Original Ray's claims of infringement, Pizza Buffet has "failed and willfully refused to cease using the RAY'S Marks and has continued its infringing conduct." Id. ¶ 29.

   B.  Damages

   Original Ray seeks to recover Pizza Buffet's profits in the amount of $216,000 plus attorney's fees and costs.  See Proposed Findings of Fact and Conclusions of Law at 2.  In order to recover an infringer's profits under the Lanham Act, a plaintiff must show "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of [Title 15 of the United States Code], or a willful violation under section 1125(c)." 15 U.S.C. § 1117(a).  Additionally, profits are "normally available only if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again." George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir.), cert. denied, 506 U.S. 991 (1992); accord U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta, Inc., 2009 WL 4351962,

5

at *2 (S.D.N.Y. Dec. 1 2009) adopted by 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009); Chloe v.

Zarafshan, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009).  The Second Circuit has held

that while these showings are necessary to obtain profits, they are not sufficient.  See George

Basch Co., 968 F.2d at 1540.  Thus, while "the egregiousness" of fraudulent conduct may suffice

to obtain profits, a court must normally also consider the following factors:

> (1) the degree of certainty that the defendant benefited [sic] from the unlawful
> conduct; (2) availability and adequacy of other remedies; (3) the role of a
> particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5)
> plaintiff's unclean hands.

Id. at 1540.[2]

Where a plaintiff shows an entitlement to profits, "the plaintiff shall be required to prove

defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15

U.S.C. § 1117(a); accord Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1063

(2d Cir. 1990).  Nonetheless, "[i]f the court shall find that the amount of the recovery based on

profits is either inadequate or excessive the court may in its discretion enter judgment for such

sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C.

§ 1117(a).

---

[2] 15 U.S.C. § 1117(a) was amended in 1999 to no longer require a showing of willfulness for an award of profits based on a violation of 15 U.S.C. § 1125(a).  See Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 174 (3d Cir. 2005) ("The plain language of the amendment indicates that Congress intended to condition monetary awards for § 43(c) violations, but not § 43(a) violations, on a showing of willfulness."); accord Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 172-73 (S.D.N.Y. 2007) ("The plain language of [section 1117(a)] . . . indicates that wilfulness is not a prerequisite for an award of damages under § 1125(a).") (citation omitted). While George Basch Co. was decided before this statutory change, we conclude that the need for the additional inquiry it describes survives the 1999 amendment to 5 U.S.C. § 1117(a) because George Basch Co.'s articulation of this inquiry relied on a portion of section 1117(a) that remained unchanged after the 1999 amendment: specifically, the statute's provision that any recovery of profits is "subject to the principles of equity."

Here, Original Ray has made the threshold showing of entitlement to Pizza Buffet's profits under 15 U.S.C. § 1117(a) inasmuch as Pizza Buffet has admitted to the allegation that it violated 15 U.S.C. 1125(a), Compl. ¶ 43, by virtue of its default.  As a result, Original Ray need not show a willful violation of section 1125(c) in order to recover profits.  In any event, in light of the complaint's allegation that Pizza Buffet intentionally infringed Original Ray's registered trademarks, id. ¶ 35, Pizza Buffet's default establishes that it is a willful infringer.  See All-Star Marketing Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011) ("Defendants have defaulted . . . and by virtue of their default are deemed to be willful infringers."); Malletier v. Carduci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("[B]y virtue of its default, [defendant] had admitted [plaintiff's] allegations that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff's] rights.").  The allegations in the complaint are also sufficient to satisfy George Basch Co.'s requirements, 968 F.2d at 1540, for an award of profits.  The complaint alleges that Pizza Buffet benefitted from its improper use of Original Ray' trademarks and that Pizza Buffet is directly responsible for the infringement.  Compl. ¶¶ 6, 22.  Original Ray has not delayed in enforcing its rights nor is there any evidence that Original Ray has unclean hands.  The Court also concludes that an award of profits is necessary to deter others from willful trademark infringement in the future.  Accordingly, Original Ray has shown an entitlement to an award of profits under 15 U.S.C. § 1117(a).

Original Ray has submitted a declaration from Agatha Mangano, a principal of the company who is responsible for overseeing its trademark compliance and enforcement program, on the issue of the amount of profits garnered by Pizza Buffet.  See Mangano Decl. ¶ 1. Mangano used her "personal observation of [Pizza Buffet's] restaurant" coupled with her "[20]

years of experience overseeing the operation aspects of pizza restaurants" to estimate Pizza Buffet's profits between May 9, 2012 and July 1, 2013 (i.e., the period of time between Original Ray first having sent a cease and desist letter to Pizza Buffet and the date of Original Ray's submission to this Court on damages).  Id. ¶¶ 22, 24.  Mangano visited Pizza Buffet on three separate occasions over the past year and, based upon her observations of the restaurant's operations, estimated that "[i]n light of the location and size of the restaurant . . . [the] total revenue per week is approximately $21,000."  Mangano further estimated the "total costs of running the restaurant . . . to be approximately $17,000" with a resultant net profit of "$4,000 per week."  Id. ¶¶ 19-21.

If the actual sales of an infringer "cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's . . . failure to produce documentary evidence."  Chloe v. Zarafshan, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (citation omitted).  Thus, although Original Ray's method of calculating profits is hardly precise, the Court finds it to be reasonable in light of Pizza Buffet's refusal to provide evidence to the contrary.  See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *6 (Plaintiff's estimates of defendant's profits are "reasonable and have some evidentiary support.  Any imprecision in calculating defendant's profits is the fault of Defendants, who failed to participate in this litigation."); Phat Fashions LLC v. Blue Max Corp., 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information . . . on costs, and because [defendant] has not cooperated in discovery, the Court finds that . . estimated sales are a fair indicator of profits."); AW Indus., Inc. v. Sleep Well Mattress, Inc., 2009 WL 485186, at *4 (E.D.N.Y. Feb. 26, 2009) (approving estimated sales approach where "[t]he amount requested [was] not excessive and . . . it [was] defendant who [was] to blame for the

8

inability to calculate an exact figure"); accord U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta, Inc., 2009 WL 4351962 at * 4 (approving Mangano's methodology for calculating profits).  Accordingly, we find that Pizza Buffet's profits during the relevant period total $216,000, and that Original Ray is entitled to obtain judgment for this amount.[3]

    C.  Injunctive Relief

In addition to monetary damages, Original Ray also seeks an order permanently enjoining Pizza Buffet from using any of the trademarks in the Original Ray family of marks or otherwise causing consumer confusion with respect to Pizza Buffet's affiliation with Original Ray.[4]  Original Ray also seeks to have the Court order, pursuant to 15 U.S.C. § 1118, that Pizza

_____

[3]The Court notes that the time period for which Original Ray seeks damages, May 9, 2012 until July 1, 2013, see Proposed Findings of Fact and Conclusions of Law at 9, is a period of 59 weeks and five days.  The $216,000 amount it seeks, by contrast, see Mangano Decl. ¶ 25, is based on a 54-week period, and thus is less than the amount it is entitled to under its own proposed method for calculating profits.  We use the $216,000 number as it is repeatedly set forth in its papers and we had previously directed Original Ray to specify "the exact dollar amount being sought."  See Scheduling Order for Damages Inquest ¶ 1.

[4]Original Ray has requested an Order worded as follows:

Pizza Buffet shall be permanently enjoined from: (1) using the Ray's family of registered trademarks incorporating the word RAY's for restaurant services [including the registered trademarks listed above in Part II A supra] or any other names or marks confusingly similar to the Ray's marks in connection with restaurant or related business or services; (2) using the Ray's marks or any other confusingly similar marks or names as part of any business name as a service mark, trademark, trade name or part thereof, alone or in combination with other words, symbols, styles, titles, or marks in connection with any restaurant or related businesses; (3) performing any act or displaying any words, names, trade dress, or marks which are likely to cause confusion; to cause mistake or deceive, or otherwise mislead the public into believing that Pizza Buffet and Ray's are one and the same, are in some way affiliated, associated, or connected; or that Ray's is a sponsor of Pizza Buffet or its restaurant; or that Pizza Buffet is in some way licensed, affiliated, associated with, or under the supervision or control of Ray's; or that the goods or services of Pizza Buffet originate from or are approved by Ray's, or which are likely in any way to lead the public to associated Pizza Buffet

Buffet "deliver up for destruction all packaging, promotional material, catalogues, print fliers, brochures, labels, wrappers and all other matter used for distribution or marketing of goods or services using the RAY'S marks."  See Proposed Findings of Fact and Conclusions of Law at 8-9.

Courts have the authority to grant injunctive relief under the Lanham Act "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation" under Section 43(a) of the Lanham Act.  15 U.S.C. § 1116(a).  In general, a plaintiff may obtain a permanent injunction if it shows (1) "actual success on the merits" and (2) "irreparable harm."  See, e.g., Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 290 (S.D.N.Y.2003); Prot. One Alarm Monitoring, Inc. v. Exec Prot. One Sec. Serv., LLC., 553 F. Supp. 2d 201, 205 (E.D.N.Y.2008) (citation omitted).  The same principles apply in the context of a default judgment.  See, e.g., Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008).

Original Ray has shown "actual success on the merits," by virtue of Pizza Buffet's default.  See, e.g., Prot. One, 553 F. Supp. 2d at 205.  "In a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'"  Gucci Am., Inc., 678 F. Supp. 2d at 120 (citations omitted).  As already noted, the

---

with Ray's; (4) doing any act or thing likely to cause confusion with regard to the Ray's marks; and (5) from unfairly competing with Ray's in any matter whatsoever.

Mangano Decl. ¶ 26.a.

10

complaint alleges that Pizza Buffet's mark incorporates two of the Original Ray marks in their entirety and that Pizza Buffet's mark is "confusingly similar to the RAY'S Marks."  Compl. ¶ 26.  In light of the volume of business of both stores, this is sufficient to allow the finding that an "appreciable number" of patrons of Pizza Buffet will be confused as to the source of the pizza it sells.  Accordingly, Famous Ray has shown irreparable harm.

Because Original Ray has shown both success on the merits and irreparable harm, Original Ray should be granted those elements of its proposed injunction that enjoin Pizza Buffet from using any of the Original Ray family of trademarks, or any other variation of the marks or names, or otherwise misleading the public into believing that Original Ray and Pizza Buffet are in some way connected.  Cf. Gucci Am., Inc., 678 F. Supp. 2d at 120 (issuing an injunction restraining defendant from continuing trademark infringement in context of default judgment).

Original Ray's request for an order requiring physical delivery and destruction of infringing materials, pursuant to 15 U.S.C. 1118, should also be granted.  Although courts have discretion to deny a request for a destruction order when a permanent injunction against further infringement may otherwise provide an adequate remedy, see Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 392 (S.D.N.Y. 2010) (citing Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc., 589 F. Supp. 2d 25, 33 (D.D.C.2008)), there is no reason to believe that a permanent injunction in this case would render a destruction order unnecessary in light of Pizza Buffet's complete failure to participate in this litigation.  Accordingly, Pizza Buffet should be ordered to deliver up for destruction all materials using the Original Ray

11

marks.[5]

      D.   <u>Attorney's Fees and Costs</u>

          1.   <u>Attorney's Fees</u>

Original Ray seeks $7,627 in attorney's fees for 21.4 hours of work and has submitted attorney Jonathan C. Sullivan's declaration along with his law firm's computerized billing records showing the services performed, the time spent, and the amount billed on this case. <u>See</u> Billing Spreadsheet (affixed as Ex. 1 to Sullivan Decl.). The Lanham Act provides that a prevailing party shall be entitled to recover the "costs of the action" and in "exceptional cases" its "reasonable attorney fees." 15 U.S.C. § 1117(a). Case law in this circuit establishes that deliberate and willful infringement, as occurred in this case, is sufficient to deem a case "exceptional" for the purposes of the statute. <u>See</u> <u>Louis Vuitton Malletier S.A. v. LY USA, Inc.</u>, 676 F.3d 83, 111 (2d Cir. 2012) ("the key [to attorney's fees in a trademark action] is willfulness on the part of defendants."); <u>Bambu Sales</u>, 58 F.3d at 854 ("The finding of willfulness determines the right to attorney's fees"); <u>GAKM Res. LLC v. Jaylyn Sales Inc.</u>, 2009 WL 2150891 at * 7 ("Because Defendants willfully infringed Plaintiffs' trademarks, Plaintiffs are entitled to reasonable attorneys' fees in this case."); <u>Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.</u>, 2006 WL 728407, at *7 (S.D.N.Y. May 2, 2005) ("[T]he defendant's infringement has been deemed willful by virtue of its default in this action. Therefore, the Court finds that an award to [plaintiff] of reasonable attorneys' fees is warranted.").

As the Second Circuit noted in <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.</u>

---

     [5] Original Ray has not offered any briefing or case law to support its request that Pizza Buffet be enjoined from "unfairly competing with Ray's in any other manner whatsoever." Accordingly, this provision should not be ordered.

County of Albany, 522 F.3d 182 (2d Cir. 2008), "[t]he most useful starting point for determining

the amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to

make an initial estimate." Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

This figure has commonly been referred to as the "lodestar," though Arbor Hill indicates a

preference for the term "presumptively reasonable fee." Id. at 183.

        As for the number of hours, it is well-established that "any attorney . . . who applies for

court-ordered compensation in this Circuit . . . must document the application with

contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended,

and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711

F.2d 1136, 1148 (2d Cir. 1983).  The Court's task is to make "a conscientious and detailed

inquiry into the validity of the representations that a certain number of hours were usefully and

reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  The critical

inquiry is "whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)

(citation omitted), cert. denied, 506 U.S. 1053 (1993).  If a court finds that claimed hours are

"excessive, redundant, or otherwise unnecessary," it should exclude those hours from its lodestar

calculation. Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6

(2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten

Corp., 109 F.3d 111, 116-17 (2d Cir. 1997).  With respect to fixing a reasonable hourly rate, the

district court should "bear in mind that a reasonable, paying client wishes to spend the minimum

13

necessary to litigate the case effectively." <u>Arbor Hill</u>, 522 F.3d at 190.[6]

John A. DeMaro, Jonathan C. Sullivan, and Natasha Moskvina of Ruskvin Moscou Faltischek, P.C. ("RMF"), a law firm in Uniondale, New York, represent Original Ray in this action.  <u>See</u> Sullivan Decl. ¶¶ 9-11.  DeMaro is a partner at RMF and chair of the firm's intellectual property department.  <u>Id.</u> ¶ 9.  He has roughly 21 years of experience, and for DeMaro's work, Original Ray seeks $475 per hour, DeMaro's usual billing rate.  <u>Id.</u>  Sullivan is also a partner at RMF and co-chair of the firm's litigation department.  <u>Id.</u> ¶ 10.  He has roughly 12 years of experience, including "represent[ing] clients in complex trademark infringement disputes at both the trial and appellate levels."  <u>Id.</u>  For his work, Original Ray seeks $395 per hour, Sullivan's billing rate.  <u>Id.</u>  Moskvina is an associate at RMF and has "extensive experience in intellectual property issues."  <u>Id.</u> ¶ 11.  She has roughly ten years of experience and for her work, Original Ray seeks $285 per hour, Moskvina's billing rate.  <u>Id.</u>

The Court finds that these attorneys merit significant hourly rates in light of the fact that (1) Pizza Buffet has not contested their reasonableness; and (2) the experience of these attorneys is so extensive that it has resulted in their seeking only a small number of hours for their work in

---

[6] Factors bearing on the determination of the hourly rate include:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n. 3 (citing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974)).

this case.  The Court concludes that the rates, however, should be more in line with those

approved for this firm in another lawsuit brought by Original Ray against a restaurant alleged to

be infringing on its trademarks.  See U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's

Pizza and Pasta, Inc., 2009 WL 4351962, at *7 (approving rates of $400 per hour for DeMaro

and $295 per hour for Sullivan).  Although these fees were awarded in 2009, the inflation rate

has been less than 10% since that time, see U.S. Dep't of Labor, Bureau of Labor Statistics,

Consumer Price Index, All Urban Consumers, U.S. City Average, dated September 17, 2103,[7]

and we do not conclude that the additional experience the attorneys gained during this period

justifies a significant increase.  Also, the firm's usual billing rates are not dispositive of the rate

to be awarded because Arbor Hill requires courts to assume the existence of a client who "wishes

to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.

Accordingly, with these principles in mind, we award $425 per hour for DeMaro, $315 per hour

for Sullivan, and $225 per hour for Moskvina.

     With respect to the number of hours expended, Famous Ray has provided a summary of

contemporaneous time records.  See Billing Spreadsheet (affixed as Ex. 1 to Sullivan Decl.).

Such a summary is permitted by case law.  See, e.g., Cruz v. Local Union No. 3 of the Int'l Bhd.

of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Johnson v. Kay, 742 F. Supp. 822, 837

(S.D.N.Y. 1990).  Original Ray's submission shows the date on which the work was done, the

attorney doing the work, the task performed, the time spent, the billing rate, and the resulting

charge for the work.  See Billing Spreadsheet (affixed as Ex. 1 to Sullivan Decl.)  The

descriptions indicate that the tasks included drafting the complaint and motion for default

---

[7] Available at:  ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt

judgment, attending court conferences, arguing the motion for default judgment, and preparing materials for the damages inquest.  The Court finds that the 21.4 hours expended by RMF are eminently reasonable in light of the nature of this litigation.  However, the Court will subtract .5 hours attributable to "Rona Kupferberg" as no information has been given as to her role or qualifications.

With the above changes, Original Ray should be awarded $ 6,091.50 in attorney's fees.[8]

        2.  <u>Costs</u>

As noted above, a prevailing plaintiff in a trademark action is entitled to recover the costs of the action.  15 U.S.C. § 1117(a).  Original Ray's submission on costs includes a spreadsheet consisting of the following disbursements: $350 for "Court Filing Fee," $9.60 in "In-House Copies," $.20 in "Computerized Research," $13.76 in "Computerized Research Westlaw," $39 in "Travel," and $215 in "Service of Process."  <u>See</u> Disbursements List (affixed as Ex. 2 to Sullivan Decl.).  Generally "[o]ut of pocket litigation costs are [ ] recoverable if they are necessary for the representation of the client."  <u>Tri–Star Pictures, Inc. v. Unger</u>, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999).  Moreover, the cost awards sought by Original Ray are "the types of routine costs awarded to prevailing parties in trademark and copyright infringement actions." <u>GAKM Res. LLC v. Jaylyn Sales Inc.</u>, 2009 WL 2150891, at *10.

---

[8]  The award is as follows:

| | |
|---|---|
| DeMaro: 1.5 hours X $425 = | $   637.50 |
| Sullivan: 12.1 hours X $315 = | $3,811.50 |
| Moskvina: 7.3hours X $225 = | $1,642.50 |
| | |
| Total | $6,091.50 |

Accordingly, Original Ray should be awarded its requested costs of $627.56.

III.  CONCLUSION

For the reasons set forth above, the Court should award Original Ray a total of $222,719.06 (consisting of $216,000 in damages, $6,091.50 in attorney's fees, and $627.56 in costs).  Original Ray should also be granted an order permanently enjoining Pizza Buffet's infringing activities and requiring Pizza Buffet to deliver up for destruction all infringing materials.

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. John G. Koeltl, at 500 Pearl Street, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Koeltl.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: September 26, 2013
         New York, New York

_GABRIEL W. GORENSTEIN_
United States Magistrate Judge

17